May it please the Court, Armin Skalmowski for Petitioner John Hua Zhao. I'd like to ask the judge to confirm that the petitioner forcibly aborted the petitioner's unborn child. Petitioner submitted hospital certificates, a certificate which documented the abortion. A letter from her husband verified all the events. Counsel, we're really familiar with the record. Yes. And I think that the adverse credibility determination and the IAC ruling are going to be key. So, do you want to jump to those? Absolutely. So, with the IAC judge, this case was straightforward until the issue of the IUD being inside of her at the time of the abortion came up. And as you saw the IJ's reaction, he kind of like just shut the whole case down and said, look, this is what I want. I want medical evidence regarding whether it's possible to perform the abortion. Right. And so I'm going to interrupt you because I know that part. So, if I can direct you perhaps to the question. Yes. I think what the BIA relied upon for purposes of the IAC claim was basically pronged to. I mean, it seems to me that the IJ was so clear that the IJ wanted to see this piece of evidence and it didn't come forward. And I think it's under contested your client was participating through an interpreter. Right. Okay. So, that makes it always difficult. And there was some writing on them on the notice, hearing notice. And of course, there are two different, actually two pieces of evidence that IJ wanted. And so, we're familiar with that discrepancy. But I think you have a very strong prong one argument. And besides, it doesn't matter so much because the BIA relied on was whether the, you know, but for the counsel's error, may there have been, might there have been a different outcome. Right. And the BIA decided that it wasn't going to change anything because of the credibility determination and the adverse credibility determination. And, you know, at first blush, we rarely reverse those. There's six different grounds for that adverse credibility determination. But it seems to me that the two toughest ones for your opponent really go to the demeanor. There's this demeanor, which I think in this case boils down to a pause. Right? Right. Okay. And then there's this other question about whether she did or did not know that this particular type of evidence was requested. Right. And that's the evidence, just to be clear, he asked for two kinds of evidence. And it's the evidence that it would be plausible to have had a forced labor without the IUD being removed. Right? Right. He also mixes up the thing with the uterus, I'm sorry, with the IUD being inside of her, because she mentions that she submitted some documents about that. The government objected to those because the doctor didn't show up. So, the judge tells her, go back to the doctor, get a letter that says that I saw you on these two occasions. That that was your sonogram. Yes. Right. And she did that too. So, he mixes up both of these discussions at the end of the case. Well, but it seems very clear to me that the IJ was unhappy, to put it mildly, that the other type of evidence was not forthcoming. And was very direct about that and said, I've told you this, I've told you I want, and I even wrote it on the notice. Right? Which is why I think you have a very strong IAC claim, because her lawyer was there and somehow this evidence wasn't produced in the end. Right. I'm sorry. Right. So, I'm trying to get to those two. The four other grounds for the negative credibility determination really boil down to inconsistencies. And I think you have a strong argument there, because as to those four arguments, he's got to give her notice of inconsistencies and an opportunity to respond. So, I'm setting those aside, but you still have two left that I think we need to focus on. One is a pause, and the other is the failure to produce the type of evidence regarding the plausibility of having a forced labor abortion without removing an IUD. So, could you focus on those two? Sure. So, you have the respondent sitting there with her counsel. She'd just gone through about an hour or so of direct examination. Very stressful situation. You have an interpreter there, and you have counsel there. And, you know, he's talking to counsel, and there might be a moment where he says, you know, Judge to Ms. Zao, will you please bring this stuff to me? But it comes down to the responsibility of the attorney, the counsel, after a hearing to explain to the client, you've got a strong IAC claim. I'm giving you that. Because I think it's inexplicable that the lawyer would then point to the client and say the client didn't prepare them. She's represented, and this evidence was not forthcoming. But focus, if you would, on the negative credibility determination, because the IJ was insistent. I told you, and you knew that this is the evidence that I needed. Once again, I just don't, okay, so she says she doesn't know that, because she went to the attorney, and she said the attorney told her all she needs is the sonogram from the doctor. He even writes down on the notice. Okay, so if you could go to the hearing notice, that would be helpful. It's 314, right? Okay. And there's writing at the top, and there's writing at the bottom. The actual notice is actually on 800. The writing on the top says something, letter from doctor, I think it's need, letter from doctor confirming that you took sonogram. So, but the one the judge gives her is actually on on page 800. I'm sorry, is it different? Yeah, because it doesn't mention the doctor conforming, confirming that you took the sonogram. Okay, wait a minute, so now I've got to get to that one, if it's different. Yeah. It's on both pages. 800. Okay, go right ahead. That's the one that she got from the judge. So, usually they give the attorney the hearing notice. So, they go back to the office, he gives her the hearing notice in the office. You're going to have to do better with your pronouns to make sure we're really clear. The attorney gave it to the petitioner? So, the judge gives the attorney page 800 after the hearing. Right, that's on record, we can tell that. So, there's nothing there about the doctor confirming that you took sonogram. So, they go back to the office, he gives her the hearing notice. He, the lawyer? Sorry, the lawyer. Gave it to the petitioner? The petitioner, correct. Okay. And someone in the office wrote down, get letter from doctor confirming that you took sonogram. And it's actually, then it's written in Chinese, which we didn't translate it. Okay, so we've got that on page 314. Right. So, she basically runs over to the doctor the same day the client does, petitioner does. I'm sorry. Okay, but counsel, this is not the piece of evidence we're focusing on, but okay. So, she understood that's all she needed. And there's no mention. Why? Who wrote this on the bottom, medical evidence regarding whether it's possible to perform abortion by induced labor? The judge wrote this. Okay. And your client had this piece of paper? She does. And your client doesn't speak English? Doesn't speak English. She relied 100% on the Chinese written part that says, get your letter from the doctor confirming that you took a sonogram, which she did on the same day. And he didn't even submit that on the record. And so, when that was explained to the IJ and the IJ said, you're complaining you don't speak 314 to your physician, you could have followed up on this. That puts a heavy burden on the client. I'm sorry, on the respondent, on the petitioner. Sorry. Well, it presupposes that she understood that she didn't know, right? That she had confusion about what she thought she was supposed to produce. That's my problem for both of you. So, you have an opportunity to respond. It seems to me that she expressed no confusion about what she was incorrect because she was incomplete. But I think that she understood quite clearly what she had to do about confirming that the sonogram was indeed her sonogram. It doesn't make sense to me. So, you both have an opportunity to respond. It does not make sense to me that she could be expected to know something that's written in English or to know that she should have a question about what's written in English so that she takes this to her doctor. That's what's missing in this she basically says, the petitioner says, that her energy, even when the judge is berating her, he's like, I gave it to you. I gave you what you wanted. It was a sonogram. Let me ask you this. Sometimes, there are people who speak through interpreters, but they also, it's pretty clear from the transcript, that they understand some English. And this IJ transcript reads as though the IJ was under the impression that she was understanding him just fine. But I can't see in a place in the record, again, for both of you, if you've got places in the record where the record indicates from the transcript that she was understanding English, that would be helpful to me. There's nowhere in the record that says she understands English. There's nothing there. It's all translated. It's all in Mandarin. There's nothing in English. What about the pause? If you read, I think it's page 796, that's, you know, he just berates her and it's almost like, you know, young child, you're sitting there, you know, blah, blah, blah. And she just, you know, apparently just probably just didn't know what to say. I mean, there was nothing about not being credible. But I mean, as you can tell with this judge... But the judge does say that he finds it derogatory of credibility. You mean the... IJ. Yeah, I think he, I think he just piles on and it's all related to the same thing with this with this missing document. I mean, even when we come back on for the remand, I mean, he, I think he's upset that she has this document all of a sudden and even says that, oh, it looks like you fabricated something. Your whole case is fabricated. But now you're speaking to the Dr. Tsai letter. Dr. Tsai letter, correct. And, you know, he's a judge that doesn't take remands kindly. And he, you know, but even before that, her not having this letter, and you can see why this issue was so big for him because the attorney didn't submit anything. And he uses this letter or failure to include this letter to find her not credible, implausible. The whole case is implausible, he says. Well, I think it's understandable why the IJ was frustrated. He'd asked for this evidence several times and it was not forthcoming, which is why I think you have a very strong IAC claim. Right. And even the attorney says, I mean, if you go back to 2014 or 13, her attorney says, oh, this document is reasonably available. He even admits to it. What about the BIA's making a note that Dr. Tsai's letter only accounted for, I think it was an eight-week pregnancy in that particular case where the IUD had remained present? And that, I think, right, that was once again what the IJ did. He's the one that said that. But the important part of Dr. Tsai's letter, it says, Mrs. Zhao's account is plausible. And he goes through three reasons why her account is plausible. And that was the whole thing that IJ wanted. One of them is that he's seen Chinese IUDs remain so tenacious that they're difficult to remove. Correct. And then the judge realized with this letter, he was kind of stuck. So I think he threw in the, oh, well, this only has, you know... Well, he's right. It doesn't match up to five months for sure. It doesn't. Yeah, right. So it's two months, right? And... Do you want to reserve the rest of your time? You're over. I've taken you over. I'm sorry. Yes, thank you. Good morning. Good morning. May it please the court. Paul Fiorino for the Attorney General. To get to your question, Judge Kristen, she was asked on page 484 of the record, the immigration judge said, and again, remember the request I made for evidence? It still stands. Do you understand? And she said, yes. So for her to turn around and say... But that's the problem, counsel, because he'd made two requests for evidence. One was, go get me something to show that this really was your sonogram. You don't necessarily have to retake a sonogram, but something that tells me this was yours. And then the other bit of evidence. Right. He says, do you understand that? And she says, yes. Yes. So she turns around and says, I didn't know what I was supposed to get. My attorney never told me. Well, actually, what she said is, I thought I did know, and I got you that. That's the difficulty I have. If she was confused and knew she was confused, that would be one thing. And then the IJ's comment would make sense to me about him saying, you could have had somebody read this bottom part to you. But in fact, as I read the record, she's evidencing, I thought I did know, and I got you that. But it's only the sonogram evidence, not the other. Well, I'm thinking about, and I may misread it, I'm thinking about what she said in her IAC affidavit, where she says, I didn't know, my attorney never told me. Now, maybe her attorney never told her, but the immigration judge clearly did. You mean about the second piece of evidence? What's that? You mean about the second piece of evidence? What was the Dr. Asai letter? Yes. Yes, yes. So, but take a look at this case a little bit more broadly. We're talking about adverse credibility. Yes. And the letter, or the absence of the letter, isn't the only thing that this case hinges on. And that's very important to remember. Because even without any of the inconsistencies, the implausibilities with respect to what she knew about the letter, there are still a number of aspects of her evidence that show that she lacked credibility, which provides substantial evidence to support the adverse credibility finding. So, the immigration judge initially... And what are those? What are those? Well, as you mentioned, there's the demeanor, the pause, which she, when she was asked about, you know, what you were supposed to get, what piece of evidence she was supposed to get, and her claim that she didn't know that she was supposed to get it. And also the other inconsistencies, too, with respect to whether she had an IUD. How could the family planning authorities have known that she didn't have one if she had it removed in secret? So, on that last point, there is evidence in the record. I don't know where they would have found it, what they would have done with it. But they don't mention the evidence in the record, which is a letter from her husband explaining that there was an, you know, annual or at least a periodic examination by the family planning officials. And they discovered that she didn't have an IUD, that it had been removed and ordered that it be reinserted. Yes, that is, that evidence is in the record. She didn't testify to that, though. And so, you know, it's not uncommon that there's evidence. This is why, when there's an inconsistency, our law requires that the IJ ask her about it, so she has an opportunity to clear it up. And I don't think that happened here. But if I've missed it, by all means, point it out. Well, here's how it happened. It did happen. Okay. In the board's first remand decision, the first decision when the board remanded, it mentioned that the immigration judge had concerns about the letter. And then in the last paragraph of that board decision, the board says, we're going to remand this case to allow her to pursue her IAC claim and also provide evidence about the inconsistencies and implausibilities cited by the immigration judge. So she did very much have the due process that she was entitled to. She did have a chance to make good on that. And that is why, at the end of the day, the totality of circumstances with respect to the adverse credibility finding provides substantial evidence to support that finding. Does the BIA ever talk about that letter, her husband's letter? No, the BIA, no, it didn't. Because as I read the BIA's decision, that first remand decision, as I read that, the board really wasn't opining on any of the merits. It was just simply taking notice of her IAC claim and giving her a chance, crediting her claims and giving her a chance to pursue that further in front of the finder of fact. So I don't think the board would have delved into that. I mean, ever. What about in their second order? No, they didn't mention it there either. But again, let's assume that they did. Okay. That's the problem. It is a problem, but remember, we're not looking at one little aspect of one inconsistency out of several. We're looking at the totality of the circumstances. Well, as for that, just I want to make sure you have a fair chance to respond. There's six, I think, potential problems, grounds for supporting the adverse credibility determination. And after the REAL ID Act, you know, it's a very lenient standard, right? Very permissive. And so it's finding a fact, to be sure. Four of them, I think, are inconsistencies that she wasn't, I'll say, confronted with, that's my word, given an opportunity to explain. And this seems to me to be one of them with her husband's letter. Again, I don't know what they would have done with it, but I don't think she was given that opportunity. So for purposes of a conversation, I'm lumping those to one side. Then that leaves the pause and the IJ's insistence that she knew that he communicated successfully with her that she needed to get this other evidence, which is the Dr. Tsai letter, right? So as to those two, I think those are, you know, they don't fall into the category where she wasn't confronted with them. Can you argue, what are your strongest points, or strongest arguments, that those two independently support the adverse credibility determination? Yes, yes. Certainly, there wasn't just one pause. There was a number of them. And I don't, I have them marked, I have them highlighted in the record right now, and I don't want to waste my time finding them. There was the one pause, but then there were a couple other ones that the IJ did mention. So the pause reflects that she is trying to think of something to say. She knows she's been confronted with something that casts doubt on her credibility. Demeanor is a very strong, as the court is looking at it. It might also mean that they really had miscommunicated, and she said, her response was, I gave it to you, right? And then she presents the certificate that really only clarifies, or verifies, that she's had this abortion. It might, but... It's hard to read into a pause. And we typically, when we get a pause, we also get other, you know, indications, like that the witnesses was stammering, or looked away, avoided eye contact. It's just unusual we don't have anything else other than a pause. Well, the IJ mentioned the pause, and you mentioned it more than once on the record. Right. So, and that is why demeanor-based adverse credibility findings are so strong, and require so much deference, because the judge was precipient. He saw how she was testifying, and he was considering her pause, in light of everything else that he had seen, and all the other grounds that he had observed, and cited as a basis for his adverse credibility finding. And if I could just repeat one more time, we may disagree on this, Your Honor, and I understand that. Was she given a chance to address those other inconsistencies that you lump in? Your Honor thinks not. I think that the Board of Immigration Appeals first remand order, giving her the opportunity, gave her all the due process that she was required, she could have made good on remand before the IJ, to clear up those other inconsistencies about, you know, and address the husband's letter. She didn't do that. She had her chance. So, to the extent that our case law, the court's case law, demands due process in identifying inconsistencies, and the non-citizen's chance to address them, she got that. Could you tell me, what is your best argument, that the IJ had successfully communicated to her, that she needed to produce the piece of evidence that's described on page 314, at the bottom of the page? On her side letter. Okay, let me take a look at the record. He says, insistently, I've told you, you need to get this to me. What is your best argument that she understood? Page 484 of the record, where he says, this is what you need, do you understand? She says, yes. Yes. Okay, but again, there's two pieces of evidence that he's identified here, and she says, yes. And then she later says, she thought she's got what he needed. But she's only got one of the two pieces of evidence. Anyway, I think you've answered my question. It's 484? 484, yes, your honor. Hang on one second, I'm going to go look at 484 again. Yes, I've got that page. Okay, thank you. Unless there's any further questions from the panel, we've made our case. We'd ask the court to affirm the board's decision and deny the petition for review. Thank you, counsel. Thank you. So, just wanted to note on page 484, this was a rescheduled master calendar hearing after the previous merits hearing. It was during the budget crisis. They had canceled the cases, so they rescheduled the case. So, they talk about a bunch of stuff. There's a different attorney there from the same firm. They discuss the dates. And then out of the blue, the judge says, and again, remember the request I made for evidence? It still stands. Well, which one? The sonogram or the Dr. Sai's letter? I mean, it's unclear. There's no mention of what evidence he's talking about. And as for the letter from the husband, that was submitted on the remand. That wasn't submitted by the first attorney. And the letter answers all the questions that were supposedly inconsistent during the first hearing. This was admitted to the record. The judge never refers to it. The BIA never, remember, refers to this letter either. And they even say, well, she's submitted nothing else but a letter from Dr. Sai. Actually, she submitted her husband's letter also. And they never addressed this letter anywhere. And once again, I think, you know, the gist of the case is Dr. Sai's letter. I mean, even the judge says, you know, he's basically telling the attorney, this case is not plausible without this letter. And then he even says at one point, the biggest question that we got in this case is this issue with the IUD. It's all about this letter. The whole case is this letter. Everything else just falls apart without the letter. She brings the letter in, denies the case. I believe my time is up unless there's any further questions. I don't think we do have further questions. Thank you both for your advocacy. We'll take that case under argument and we'll stand in recess. Thank you.
judges: TASHIMA, UNKNOWN, CHRISTEN